# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JEFFREY J. PROSSER,** *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**JEFFERSON B. SESSIONS, III,** *et al.*,<br><br>Defendants. | Case No. 1:17-cv-01662 (TNM) |

## MEMORANDUM OPINION

*Pro se* Plaintiff Jeffrey Prosser is the debtor in a Chapter 7 bankruptcy and the beneficial owner of three companies in Chapter 11 bankruptcy. Compl. 3 n.5, 5, ¶ 3. *Pro se* Plaintiff John Raynor is a former director and outside counsel to one of Mr. Prosser's companies, has pursued legal claims against the National Rural Utilities Cooperative Finance Corporation, or CFC, and has been the defendant in what he characterizes as an extortionary adversary proceeding. *Id.* ¶ 4. Plaintiffs allege that CFC has engaged in an extensive scheme of accounting fraud and public corruption in violation of the Racketeer Influenced and Corrupt Organizations Act, or RICO. Through this lawsuit, they seek to compel Attorney General Jeff Sessions to intervene in Mr. Prosser's bankruptcy proceedings. They also seek to compel Treasury Secretary Steven Mnuchin to cease and desist funding CFC from the United States Treasury. Because Plaintiffs have failed to state a claim that entitles them to the requested intervention and have not shown standing to challenge CFC's funding, the Defendants' Motion to Dismiss will be granted.

## I. BACKGROUND

Plaintiffs' Complaint and other filings focus mainly on allegations about CFC's misconduct. Although CFC is not a party to this case, Plaintiffs' allegations against CFC

provide the basis for their request that the Attorney General intervene in Mr. Prosser's bankruptcy proceedings and that the Secretary of the Treasury discontinue funding of CFC.[1] CFC is a tax-exempt, member-owned financing cooperative that supplements federal loan programs to support the generation and distribution of electricity in rural America. *Id.* ¶¶ 10-11. Plaintiffs allege that CFC engaged in extensive accounting fraud, including embezzling nearly $263 million in five years from the Rural Telephone Finance Cooperative, or RTFC, which CFC controls. *Id.* ¶¶ 30-56. Plaintiffs also allege that CFC corrupted public officials in the Virgin Islands, including several federal prosecutors and former Governor John Percy de Jongh, Jr., who was arrested for financial crimes. *Id.* ¶¶ 16, 21, 23. According to Plaintiffs, "Fraud and criminality is a systemic part of CFC's operations and without it, CFC cannot financially survive." *Id.* ¶ 62.

Plaintiffs allege that CFC has victimized them for their efforts to address its misconduct. Mr. Prosser alleges that he discovered CFC's accounting fraud when his three companies borrowed money from RTFC, which CFC controlled, and CFC embezzled funds from those companies. *Id.* at 3. Mr. Prosser says that, because he "raised the issue of Embezzlement," RTFC illegally foreclosed on loans that it made to his companies and forced Mr. Prosser and his companies into bankruptcy. *Id.* at 5.

Mr. Raynor, a former director and outside counsel to at least one of Mr. Prosser's companies, alleges that he filed a civil False Claims Act complaint against CFC. *Id.* at 10. He also alleges that he provided information to the Department of Justice to encourage an

---

[1] The Complaint seeks an order directing both the Attorney General and the Secretary of the Treasury to cease and desist funding CFC from the United States Treasury but does not allege that the Attorney General has provided CFC funds from the United States Treasury. *See id.* ¶ 37. In any event, my analysis of Plaintiffs' standing does not depend on whether the cease and desist order would issue against one or both the Defendants.

investigation of potential RICO violations, potential criminal False Claims Act violations, and potential bank fraud, and that the Department of Justice responded by conducting an extensive criminal investigation. *Id.* at 10 & n.14, 14. Mr. Raynor says that he was forced to defend himself in an extortionary adversary proceeding. *Id.* at 10.

Plaintiffs also allege that, in what they call the "ICC Bribery," CFC paid about $20 million in bribes to public officials "to facilitate the involuntary bankruptcy of New ICC [one of Mr. Prosser's companies] and to enlist the support of those public officials . . . in pursuing CFC's retaliatory agenda." Pls.' Statement of Facts in Opp. to Mot. Dismiss 4-5. CFC arranged these bribes through a consultant and several court-appointed bankruptcy professionals in Mr. Prosser's bankruptcy proceedings. *Id.* at 4. According to Plaintiffs, CFC bribed two federal prosecutors, at least one witness in the bankruptcy proceedings, and a former Territorial Senator, Alvin Williams, who was arrested on six counts of bribery in 2012. Compl. 6-7. Plaintiffs also allege the Department of Justice forced the judge presiding over the bankruptcy proceedings to retire from the bench after a pattern of unsupportable decisions that suggested bribery. *Id.* at 7.[2]

The District Court for the U.S. Virgin Islands sealed at least some records in the criminal proceeding against former Territorial Senator Williams to protect the Department of Justice's ongoing criminal investigation. *Id.* at 8. Plaintiffs have tried to have these records unsealed, but without success. *Id.* at 8-9. Plaintiffs allege the sealed records would show that

> (i) the foreclosure which resulted in the Prosser Bankruptcies was unlawful; (ii) the Bankruptcy proceedings in the Prosser Bankruptcies were completely and thoroughly corrupted and lacked any integrity whatsoever; (iii) the Bankruptcy proceedings in the Prosser Bankruptcies were not impartially adjudicated; and (iv) with the implied consent of the DOJ, the U.S. Treasury has funded CFC's pattern of racketeering activities in violation of the False Claims Act.

---

[2] But Plaintiffs also allege that the Department of Justice had no direct evidence of bribery and no publicly disclosed connection to the judge's retirement. *Id.* at 7 & n.10.

*Id.* at 9. This allegation is based at least in part on statements made to Mr. Prosser by a co-indictee of Mr. Williams. *Id.* at 8.

Mr. Prosser and Mr. Raynor brought this case against the Attorney General and the Secretary of the Treasury in their official capacities, seeking an order from the Court compelling the Attorney General to intervene in Mr. Prosser's bankruptcy proceedings and directing the Secretary to cease and desist funding CFC. *Id.* at 37-38. Plaintiffs also filed a Motion for Miscellaneous Relief, seeking an order from the Court directing the Department of Justice to file under seal in this case: (1) the sealed documents from Mr. Williams' criminal case; and (2) any documents involving admissions by the bankruptcy judge that he did not impartially adjudicate Mr. Prosser's bankruptcy proceedings. Defendants moved to dismiss the case for failure to state a claim to the requested relief and for lack of standing.[3]

## II. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires that a complaint raise "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleading facts

---

[3] Plaintiffs' Opposition to the Motion to Dismiss argues that the sealing of records in Mr. Williams' criminal case violated Plaintiffs' constitutional rights but does not ask to unseal the records. Defendants' Reply notes that any challenge to the Virgin Islands District Court's sealing order should be filed in that court or raised on appeal. Plaintiffs moved to strike this argument because Plaintiff's original Motion to Dismiss did not raise it. The law generally disfavors motions to strike. *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 226 (D.C. Cir. 2011). Because Plaintiffs first challenge the constitutionality of the sealing order in their Opposition and because, in any event, this issue is not material to my analysis, I will not strike the Reply or grant leave to file a Sur-Reply. *See Baloch v. Norton*, 517 F. Supp. 2d 345, 348 n.2 (D.D.C. 2007) (denying motion to strike new argument in reply because it responded to new argument in opposition).

4

that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 545-46.  Thus, a court evaluating a motion to dismiss for failure to state a claim does not accept the truth of legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.  That said, it construes the complaint in the light most favorable to the plaintiff and accepts as true all reasonable inferences drawn from well-pled factual allegations.  *See In re United Mine Workers of Am. Emp. Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994).  Consideration is limited to "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Hurd v. D.C. Gov't*, 864 F.3d 671, 678 (D.C. Cir. 2017).

On a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing jurisdiction.  *Georgiades v. Martin-Trigona*, 729 F.2d 831, 833 n.4 (D.C. Cir. 1984).  "Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'"  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quoting U.S. Const. art. III, § 2).  "No principle is more fundamental to the judiciary's proper role in our system of government," and "[t]he concept of standing is part of this limitation."  *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 37 (1976).  Article III standing requires an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).  "While the district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction . . . the court must still accept all of the factual allegations in [the] complaint as true." *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

5

The Court construes *pro se* filings liberally, holding them "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### III. ANALYSIS

#### A. The Plaintiffs Have Not Stated a Claim That Entitles Them to the Requested Intervention

The parties agree that the order Plaintiffs seek directing the Attorney General to intervene in Mr. Prosser's bankruptcy proceedings constitutes mandamus relief. *See* Defs.' Memo. ISO Mot. Dismiss 4; Pls.' Opp. to Mot. Dismiss 11; *see also* 28 U.S.C. § 1361 (authorizing mandamus actions "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff"). "The mandamus remedy is an extraordinary one, and it is to be utilized only under exceptional circumstances . . . ." *Haneke v. Sec. of Health, Ed. & Welfare*, 535 F.2d 1291, 1296 (D.C. Cir. 1976). Even under exceptional circumstances, mandamus issues only at the discretion of the court. *Nat'l Wildlife Fed'n v. United States*, 626 F.2d 917, 923 (D.C. Cir. 1980). Mandamus generally requires "a clear right in the plaintiff to the relief sought, a plainly defined and nondiscretionary duty on the part of the defendant to honor that right, and no other adequate remedy, either judicial or administrative, available." *Ganem v. Heckler*, 746 F.2d 844, 852 (D.C. Cir. 1984).

Plaintiffs have a particularly steep hill to climb in suggesting that a court could—let alone should—order a coordinate branch to intervene in their case. The Constitution vests the executive power in the President, not in the Judiciary. U.S. Const. art. II, § 3. Decisions such as whether to bring or drop criminal charges or to institute or join a civil proceeding are squarely within the core executive function. The traditional rule is that "an agency's decision not to take enforcement action should be presumed immune from judicial review." *Heckler v. Chaney*, 470 U.S. 821, 832 (1985) (holding that the Administrative Procedure Act did not alter this traditional

rule). The Executive Branch generally enjoys "absolute discretion" in determining whether the United States should take legal action. *Swift v. United States*, 318 F.3d 250, 253 (D.C. Cir. 2003). To show that they are entitled to mandamus relief against the Attorney General, Plaintiffs must show that their case presents an exception to these well-established rules.

Plaintiffs have failed to state a claim that entitles them to mandamus relief because they have not established a plainly defined and nondiscretionary duty of the Attorney General that would require him to intervene in Mr. Prosser's bankruptcy proceedings. Plaintiffs state at the outset of their Complaint that their claim to "the requested relief is premised upon the affirmative duty . . . of the Department of Justice . . . and/or the United States Department of Treasury . . . which mandates affirmative action to: (i) protect the integrity of Bankruptcy proceedings; (ii) protect the Treasury of the United States from False Claims; and (iii) by implication, to cease and desist Federal funding a person [including a corporation] engaged in a pattern of racketeering activity within the meaning of [RICO]." Compl. 1-2. The alleged duties to protect the Treasury from false claims and to cease and desist funding a person engaged in RICO violations underlie Plaintiffs' challenge to CFC's receipt of federal funds, but do not entitle them to an order requiring the Attorney General to intervene in Mr. Prosser's bankruptcy proceedings. Thus, Plaintiffs' request for a writ of mandamus depends solely on the Department of Justice's alleged duty to take affirmative action to protect the integrity of bankruptcy proceedings. And Plaintiffs have not shown that this duty exists.

Plaintiffs cite a plethora of sources to prove "[t]here can be no dispute that the U.S. Code reflects Federal Public Policy intended to *promote the efficiency, and to protect and preserve the integrity, of the bankruptcy system*." *Id.* ¶ 73. According to Plaintiffs, "It is antithetical to the Federal Public Policy and U.S. Code" to allow unjust decisions to stand, particularly after

7

forcing a bankruptcy judge to retire because of those decisions. *Id.* ¶ 74. But Plaintiffs have not shown that the law imposes on the Attorney General "a plainly defined and nondiscretionary duty" requiring him to intervene in Mr. Prosser's bankruptcy proceedings. *See Ganem*, 746 F.2d at 852.

Plaintiffs cite two provisions of the United States Code to establish the Attorney General's affirmative duty.[4] First, they cite 28 U.S.C. § 586(c), which states, "Each United States trustee shall be under the general supervision of the Attorney General, who shall provide general coordination and assistance to the United States trustees." *Id.* ¶ 70. Second, they cite 18 U.S.C. § 3057:

> (a) Any judge, receiver, or trustee having reasonable grounds for believing that any violation under chapter 9 of this title or other laws of the United States relating to insolvent debtors, receiverships or reorganization plans has been committed, or that an investigation should be had in connection therewith, shall report to the appropriate United States attorney all the facts and circumstances of the case, the names of the witnesses and the offense or offenses believed to have been committed. Where one of such officers has made such report, the others need not do so.
> (b) The United States attorney thereupon shall inquire into the facts and report thereon to the judge, and if it appears probable that any such offense has been committed, shall without delay, present the matter to the grand jury, unless upon inquiry and examination he decides that the ends of public justice do not require investigation or prosecution, in which case he shall report the facts to the Attorney General for his direction.

---

[4] Plaintiffs also cite 18 U.S.C. § 242, which establishes criminal penalties for deprivation of civil rights under color of law. Compl. 35 n.51. But this statute creates no affirmative duties nor suggests that intervention in a bankruptcy proceeding would be appropriate relief. And, as a criminal statute, it does it provide Plaintiffs a private right of action. *See Rockefeller v. United States Court of Appeals Office*, 248 F. Supp. 2d 17, 23 (D.C. Cir. 2003) (dismissing private claims based on 18 U.S.C. § 242 because it is a criminal statute).

8

*Id.* ¶ 71. These statutes impose only one requirement on the Attorney General: That he "provide general coordination and assistance to the United States trustees." 28 U.S.C. § 586(c). That duty does not plainly require him to intervene in Mr. Prosser's bankruptcy proceedings.[5]

Plaintiffs also cite three Department of Justice Publications. First, they cite a Department of Justice handbook on bankruptcy for the proposition that "[t]he United States Trustee Program acts in the public interest to promote the efficiency, and to protect and preserve the integrity, of the bankruptcy system." Compl. ¶ 69. Second, they cite the United States Attorneys' Manual, stating, "Courts have recognized that the [United States Trustee Program] serve[s] as the vanguard, especially on those issues that impact upon the integrity of the [bankruptcy] process." Compl. ¶ 69. Third, they cite the United States Trustee Program Policy and Practices Manual, which states that the United States Trustee Program "is responsible for overseeing the nation's bankruptcy system," that its "mission is to promote the integrity and efficiency of the bankruptcy system," and that it pursues its mission by enforcing bankruptcy laws and by ensuring that those involved in the bankruptcy process fulfil their legal obligations. Defs.' Opp. to Mot. Dismiss 16-17. But these high-level descriptions of the United States Trustee Program and its aspirations establish no affirmative duty that would require intervention in Mr. Prosser's bankruptcy proceedings.

Plaintiffs' remaining citations similarly fail to establish an affirmative duty that would entitle them to mandamus relief. Plaintiffs cite Collier on Bankruptcy for the proposition that "the statutes establishing the federal bankruptcy crimes seek to prevent and redress abuses of the

---

[5] The statutes also mention duties to work under the Attorney General's supervision, to report suspected unlawful activity, to investigate suspected unlawful activity, and to present such matters to a grand jury unless the ends of public justice do not so require. But the statutes do not impose these duties on the Attorney General and do not address intervention in bankruptcy proceedings.

9

bankruptcy system" and that "they set basic rules for participation in the civil bankruptcy process." Compl. ¶ 68. But this has nothing to do with whether the Attorney General has an affirmative duty to intervene in bankruptcy proceedings that have gone wrong.

Plaintiffs also cite three out-of-circuit opinions for the proposition that "[c]ourts recognize the DOJ's enforcement duty, watchdog and advocate." Defs.' Opp. to Mot. Dismiss 18 & n.8. Similarly, they note that the Attorney General takes an oath to execute the laws of the United States faithfully and quote a District of Columbia Circuit opinion stating that "[t]he Constitution entrusts the Executive with [the] duty to take Care that the Laws be faithfully executed." Compl. ¶ 63 (quoting *Swift*, 318 F.3d at 253).[6] But the general duty to enforce the law does not plainly require the Attorney General to intervene in any particular bankruptcy proceeding.

As explained above, the Executive Branch enjoys wide discretion in enforcing the law. Plaintiffs have not pointed to any authority that cabins the Attorney General's discretion for bankruptcy proceedings. They have not pointed to any authority plainly defining a nondiscretionary duty that requires the Attorney General to intervene in Mr. Prosser's bankruptcy proceedings. Thus, they have failed to state a claim on which the extraordinary remedy of mandamus relief may be granted.

### B. Plaintiffs Have Not Established Standing to Challenge CFC's Federal Funding

The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or

---

[6] *Swift* uses this as a reason the Executive enjoys "absolute discretion" in determining whether to bring an action, not as grounds for a nondiscretionary duty to act. *Id.*

controversy." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573-74 (1992). To have Article III standing, a Plaintiff must suffer an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto*, 561 U.S. at 149.

Although Plaintiffs allege significant injuries, they do not trace any of their injuries to federal funding of CFC or show how a favorable ruling on their request for a cease and desist order would redress their injuries. They expressly disclaim taxpayer standing, standing under the False Claims Act, and standing under the All Writs Act. Pls.' Opp. to Mot. Dismiss 12.[7] Plaintiffs claim standing based on the Administrative Procedure Act, or APA, the mandamus statute, and the United States Constitution. *Id.* at 12-16. But their standing arguments focus exclusively on injuries caused by the Department of Justice's alleged failure to perform its law enforcement duties. *See id.* Plaintiffs have not shown that the APA, the mandamus statute, or the Constitution makes federal funding of an enterprise engaged in a pattern of RICO violations a cognizable injury for purposes of Article III standing.

Under the APA, as Plaintiffs note, "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702; *see also* Pls.' Opp. to Mot. Dismiss 12-13. The mandamus statute provides, "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Neither statute creates substantive rights violated by federal funding of the CFC. Nor is it

---

[7] They also disclaim standing as victims to compel the Department of Justice "to execute on the sealed indictments with respect to the related criminal investigations." *Id.*

11

apparent that this funding violates any of Plaintiffs' constitutional rights. Thus, Plaintiffs have not shown that the APA, the mandamus statute, or the Constitution provides grounds for determining that federal funding of the CFC injures the Plaintiffs or that a cease-and-desist order would redress any injuries that Plaintiffs have suffered. So Plaintiffs have not satisfied their burden of establishing standing to challenge the federal funding of CFC.

## IV. CONCLUSION

For the reasons explained above, the Defendants' Motion to Dismiss will be granted and the Plaintiffs' Motion to Strike will be denied. Because the documents that are the subject of Plaintiffs' Motion for Miscellaneous Relief are not material to the disposition of these motions, the Motion for Miscellaneous Relief will also be denied. A separate order will issue.

Dated: May 29, 2018

TREVOR N. MCFADDEN
United States District Judge